## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHESAPEAKE THERMITE : CIVIL NO: 1:22-CV-02004
WELDING, LLC d/b/a CTW :
         :
   Plaintiff,  : (Magistrate Judge Schwab)
         :
  v.     :
         :
RAILROAD SOLUTIONS, INC., :
and TRACY L. WINGENROTH, :
         :
   Defendants.  :

## MEMORANDUM OPINION

### I.  Introduction.

Despite allegedly being the lowest responsive and responsible bidder, the plaintiff was not awarded a construction contract involving a railroad terminal. The plaintiff contends that this was so because of the conduct of the defendants. Currently pending is the defendants' motion to transfer venue and/or to dismiss for failure to state a claim upon which relief can be granted.  Because venue is proper in this district and because the defendants have not shown that the case should be transferred for the convenience of the parties and witnesses and in the interest of justice, we will deny the motion to the extent it seeks a transfer of venue.  Because contrary to the defendants' argument, the amended complaint adequately alleges a causal connection between the defendants' conduct and the plaintiff's damages, we

will also deny the motion to dismiss for failure to state a claim upon which relief can be granted.

## II.  Background and Procedural History.

The plaintiff Chesapeake Thermite Welding, LLC, d/b/a CTW ("CTW") began this action in the Court of Common Pleas of Dauphin County, Pennsylvania. *See doc. 1*.  The defendants Railroad Solutions, Inc. ("RSI") and Tracy L. Wingenroth ("Wingenroth") subsequently removed the case to this court. *Id*.  The parties then consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *See doc. 14*.  On March 6, 2023, CTW filed an amended complaint again naming RSI and Wingenroth as defendants. *See doc. 23*.  CTW alleges the following facts in its amended complaint.

CTW is a limited liability company organized and existing under the laws of the State of Virginia with its principal place of business in Virginia. *Id*. ¶ 1.  CTW is a construction contractor that works on, among other projects, railroad projects. *Id*. ¶ 5.

RSI is a corporation organized and existing under the laws of the State of Florida with its principal place of business in Harrisburg, Pennsylvania and with its Pennsylvania registered office in Harrisburg, Pennsylvania. *Id*. ¶ 2.  RSI provides consulting services to railroads and their customers, specializes in securing funding

for transportation projects, and provides project management services. *Id*. ¶ 6. Wingenroth, who is the President of RSI, the sole or majority shareholder of RSI, and the authorized representative and agent to act on behalf of RSI, also has her principal place of business in Harrisburg, Pennsylvania. *Id*. ¶¶ 3, 4. Wingenroth is also a lobbyist and partner of ERG Partners whose principal place of business is Harrisburg, Pennsylvania. *Id*. ¶ 7.

The case involves a railroad construction project on property owned or used by Pittsburg Intermodal Terminals, Inc. ("PIT") in Beaver County, Pennsylvania. *Id*. ¶ 8. The project is known as the PIT Intermodal Terminal Rehabilitation Project ("PIT Project"). *Id*. The PIT Project was to be funded by the Pennsylvania Rail Freight Assistance Program ("RFAP"), which assists in the construction and rehabilitation of local railroad lines. *Id*. ¶ 19. The empowering statute for the RFAP is Pennsylvania's "Rail Freight Preservation and Improvement Act" ("RFPIA"). *Id*. ¶ 20. The RFAP is administered by and through the Commonwealth's Department of Transportation ("PennDOT"), Bureau of Multimodal Transportation, formerly the Bureau of Rail, Freight, Ports & Waterways ("Bureau"). *Id*. ¶ 22. RFAP provides 70% of the funding for a rail freight project, while the owner provides the remaining 30%. *Id*. ¶ 24.

CTW is a consistent bidder on RFAP projects and has been so for over a decade. *Id.* ¶ 23. As such, CTW is familiar with the specifications and procedures for RFAP projects. *Id.*

Prior to April 2020, RSI and PIT entered into a contract whereby RSI was to provide consulting and management services to PIT. *Id.* ¶ 9. In April 2020, PennDOT and PIT entered into a "Rail Freight Grant Agreement" ("Grant Agreement") relating to the PIT Project. *Id.* ¶¶ 10, 26. The Grant Agreement was approved by the Office of the Attorney General and the Commonwealth's Office of Budget. *Id.* ¶ 27. Pursuant to the RFPIA and the Grant Agreement, PIT was to comply with all laws, regulations, and polices applicable to competitive bidding for public projects. *Id.* ¶ 28. "The Bureau sets forth, oversees, and approves all aspects of the bid advertisement, bid documents, bidding, contract award, and contract performances by either its own forces or by supervision of a third-party project manager such as RSI." *Id.* ¶ 29.

CTW, RSI, and Wingenroth were involved in several RFAP projects before the PIT Project. *Id.* ¶ 30. For various reasons, that history was contentious. *Id.* ¶¶ 31–49.

CTW bid on the PIT Project. *Id.* ¶¶ 50–61. On February 2, 2021, PIT opened all bids, and CTW appeared to be the lowest responsive and responsible bidder by approximately $50,000.00. *Id.* ¶¶ 14, 62. But Wingenroth sent emails on

February 5, 2021, and February 12, 2021, to Mark J. Hammert, Jr. of PennDOT,

regarding CTW's bid, and based upon these emails, PennDOT granted RSI and

Wingenroth's request to reject CTW's bid. *Id*. ¶¶ 15, 17.  Wingenroth's February

5, 2021 email to Hammert provided, in pertinent part:

> PIT would like to reject the low bidder Chesapeake Thermite
> Welding (CTW) primarily because the bid submission was
> incomplete – a complete construction schedule including a start
> and end date was not provided.   As mentioned above, the
> owner would like to begin construction as soon as possible, and
> the second lowest bidder Kennedy Railroad Services (KRS) has
> indicated construction/ordering materials can begin as soon as
> the Notice to Proceed is issued.
>
> Other than a request that PennDOT approve Kennedy Railroad
> Services (KRS) as the lowest responsive/responsible bidder,
> and an acknowledgement that any costs beyond the $700,000
> state share will be the responsibility of the owner, do you need
> anything further indicating the reasons for rejecting the lowest
> bid.

*Id*. ¶ 63; *Doc. 23-1* at 115.  Hammert replied to that email explaining why the

asserted reason for wanting to reject CTW's bid was not appropriate and would

require the rejection of all the other bids except the highest bidder. *Doc. 23* ¶ 64;

*Doc. 23-1* at 117.  Hammert also stated: "If the grantee would like to further pursue

rejecting CTW's bid, they need to provide more substantial reasoning." *Doc. 23-1*

at 117.

On February 11, 2021, Wingenroth sent another email to Hammert. *Doc. 23*

¶ 65; *Doc*. *23-1* at 119.  In addition to further explaining why CTW's bid was not

responsive because it did not have a proposed schedule of construction,

Wingenroth raised other concerns with CTW's bid including CTW's available

credit. *Doc. 23-1* at 119–20.  Wingenroth also pointed to problems with the quality

and safety of CTW's work on other projects:

> Further, the bidder supplied references included three PennDOT
> grant projects during the past five years.  All three were
> contacted for comment.  Two of the three reported issues with
> unauthorized substitution of materials and other departures
> from bid specifications (safety and workmanship) that had to be
> corrected.  The third reference was pleased though related an
> issue with safety practices that resulted in injury.  Worker
> safety is an essential bid specification.

*Id.* at 120.  And she included a newspaper article from the August 20, 2020 Edition

of <u>Press Enterprise</u> titled "Worker trapped atop crane." *Doc. 23* ¶ 65; *Doc. 23-1* at

123.  Wingenroth concluded this email:

> The Owner cannot accept a nonresponsive bid.  If the bid was
> responsive, the Owner would find it difficult to conclude that
> bidder's recent history on PennDOT rail grant projects
> corresponds with being a responsible bidder.
>
> The Invitation for Bids provides, "The Owner reserves the right
> to reject any and all bids or not award any contract."  The
> Owner is inclined to reject the nonresponsive bid and begin
> assessment of the second lowest bid.  As all bids exceeded the
> limit on state participation, the selection of a responsive bid will
> have no effect on PennDOT's financial obligations but will
> enhance prospects for a successfully completed project.

*Doc. 23-1* at 120.

Hammert responded to this email by stating that "[t]he Bureau will support

the decision to go with the second lowest bidder based on the additional reasoning

specifically concerning safety and workmanship." *Doc. 23-1* at 128.  He also

cautioned, however, that "[t]his is not an approval to award the contract to

Kennedy Railroad Services.  We still need to process some paperwork and run a

CRP check before an approval to award the contract can be issued." *Id.*

Wingenroth's emails to Hammert were received by PennDOT at its offices

or servers located in Harrisburg, Pennsylvania. *Id.* ¶ 16.  And the Bureau relied

upon these communications in approving the rejection of CTW's bid. *Id.* ¶¶ 17, 82.

CTW asserts that it is these communications that give rise to this action. *Id.* ¶ 17.

PIT awarded the contract for the PIT Project to Kennedy Railroad Services

on March 1, 2021. *Id.* ¶ 75.  PIT sent the letter rejecting CTW's bid to the wrong

address. *Id.* ¶¶ 76–79.  CTW suggests that Wingenroth drafted the rejection letter

and instructed PIT to use an improper address. *Id.* ¶¶ 80, 81.  CTW learned that its

bid had been rejected only after specifically inquiring. *Id.* ¶¶ 68–73.

PIT's rejection letter mirrors Wingenroth's emails to Hammert, and

Wingenroth and RSI furnished all the information in the rejection letter to PIT. *Id.*

¶¶ 74, 92.  CTW contends that Wingenroth and RSI failed to conduct an

investigation before setting forth the negative information about CTW. *Id.* ¶¶ 84–

91.  And that information was wrong. *Id.* ¶ 93.  CTW alleges that "[t]he acts,

omissions or conduct of RSI, acting by and though Wingenroth, were the direct

and proximate cause of CTW not being awarded the contract for the Project" and for "not obtaining or losing its profit for the Project of $505,987.00." *Id.* ¶¶ 96, 97.

The amended complaint contains five counts each against both RSI and Wingenroth. Count I is a claim of negligence. *Id.* ¶¶ 99–115. Count II is a claim of defamation. *Id.* ¶¶ 116–30. Count III is a claim of false light. *Id.* ¶¶ 131–46. Count IV is a claim for commercial disparagement. *Id.* ¶¶ 147–61. And Count V is a claim for tortious inference with a contractual or prospective contractual relationship. *Id.* ¶¶ 162–80.

RSI and Wingenroth filed a motion to transfer venue and/or to dismiss the amended complaint for failure to state a claim upon which relief can be granted. *Doc. 26.* That motion has been fully briefed. *See docs. 27–29.* For the reasons set forth below, we will deny the motion.

## III.  Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406.

RSI and Wingenroth challenge venue under Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a). "Federal Rule of Civil Procedure 12(b)(3) allows a party to assert the defense of improper venue." *Allen v. Foxway Transportation, Inc.*, No. 4:21-CV-00156, 2022 WL 265945, at *1 (M.D. Pa. Jan. 27, 2022). "When venue is improper, Rule 12(b)(3) provides defendants relief in the form of transfer or, if there is no appropriate venue to transfer the action, dismissal." *Warren v. Donegal*

*Mut. Ins. Co.*, No. 1:22-CV-01309, 2023 WL 3260727, at *3 (M.D. Pa. May 4,

2023).  Similarly, 28 U.S.C. § 1406(a) provides that when venue is improper, the

court "shall dismiss, or if it be in the interest of justice transfer such case to any

district or division in which it could have been brought."  "The moving party has

the burden of proving improper venue." *Post Acute Medical, LLC v. LeBlanc*, 826

F. App'x 163, 166 (3d Cir. 2020) (citing *Myers v. Am. Dental Ass'n*, 695 F.2d 716,

724 (3d Cir. 1982)).  "Motions to dismiss for improper venue 'generally require the

court to accept as true the allegations of the pleadings.'" *Warren*, 2023 WL

3260727, at *3 (quoting *Heft v. AAI Corp.*, 355 F. Supp. 2d 757, 762 (M.D. Pa.

2005)).  "To prove that venue is improper, defendants 'may submit affidavits in

support of their positions, and may stipulate as to certain facts, but the plaintiff is

entitled to rely on the allegations of the complaint absent evidentiary challenge.'"

*Id*. (quoting *Heft*, 335 F. Supp. 2d at 762).[1]

    RSI and Wingenroth argue that venue in this district is not proper under the

general venue statute, 28 U.S.C. § 1391(b), which provides that a civil action may

be brought in:

> (1) a judicial district in which any defendant resides, if all
> defendants are residents of the State in which the district is
> located;

---

[1] Here, Wingenroth submitted her declaration in support of the request to transfer venue. *See doc. 27-1* at 2–7.  And CTW's counsel, Kenneth W. Lee, Esquire, also submitted an affidavit in opposition. *See doc. 28-1* at 1–29.

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Contrary to CTW's allegations, RSI and Wingenroth assert that they are not residents of Pennsylvania; rather, they are both residents of Florida. Thus, they maintain that venue is not proper under § 1391(b)(1). They also highlight that the PIT Project involved construction in the Western District of Pennsylvania, the bid was advertised in two newspapers published in the Western District, the required pre-bid meeting took place in the Western District, and PIT's principal place of business is in the Western District. Further, they contend that the location of PennDOT's offices and servers are immaterial given that PennDOT was not a party to the prospective contract and PennDOT did not possess the authority to select or reject bids; only PIT had that authority.[2] Thus, they maintain that venue

---

[2] In support of their contention that PennDOT did not have the authority to select or reject bids, RSI and Wingenroth cite to the decision of the Commonwealth Court in connection with CTW's bid challenge regarding the PIT Project. *See Chesapeake Thermite Welding, LLC v. Dep't of Transp.*, No. 548 2021, slip op. (Pa. Commw. Ct. Oct. 17, 2022) (available at *doc. 27-1* at 836). We may take judicial notice of that opinion, but only for limited purposes. *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) (stating that court "may take judicial notice of another court's

is not proper under § 1391(b)(2).  Whatever the merits of RSI and Wingenroth's arguments regarding § 1391, they are irrelevant in this case.

Section 1391 defines the appropriate venue for most cases brought in federal court. *Heft*, 355 F. Supp. 2d at 771.  But this case was not brought in federal court. Rather, it was brought in state court and then removed to federal court.  In an action removed from state to federal court, § 1391 is not the applicable venue provision. *Polizzi v. Cowles Mags., Inc.*, 345 U.S. 663, 665 (1953) (concluding that "§ 1391 has no application to this case because this is a removed action").  Rather, the applicable venue provision in a removed action is 28 U.S.C. § 1441(a). *Id*. at 665–66.  Section 1441(a) provides:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

Section 1441(a) "acts not only as a grant of authority, but also as a limitation on venue." *Heft*, 355 F. Supp. 2d at 771.  "A state court action may be removed only

---

opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity").  Here, RSI and Wingenroth are not clear as to for what purposes they think the court should consider the Commonwealth Court's decision.  For example, RSI and Wingenroth do not argue that res judicata or collateral estoppel apply in this case based on the Commonwealth Court's decision.  Given our decision, here, we need not address the Commonwealth Court's decision further at this time.

to the 'district and division embracing the place where such action is pending.'" *Id*. (quoting 28 U.S.C. § 1441(a)). "Proper venue in a removed action is governed by this limitation." *Id*.[3]

Here, this action was removed from the Court of Common Pleas of Dauphin County, which is located within the Middle District of Pennsylvania. Thus, under § 1441(a), venue is proper in the Middle District of Pennsylvania. Further, "'§ 1406(a), by its own terms, only applies to cases that were "filed" in this Court' and is inapplicable when a case has been removed from state court." *Gold Line, Inc. v. Ourbus, Inc.*, No. 3:20-CV-02015, 2022 WL 16554992, at *15 (M.D. Pa. Oct. 31, 2022) (quoting *Elan Suisse Ltd. v. Christ*, No. CIV A 06-3901, 2006 WL 3838237, at *2 (E.D. Pa. Dec. 29, 2006)). Thus, we "cannot transfer this case pursuant to § 1406(a)." *Id*.

RSI and Wingenroth resist the conclusion the venue is proper in this district under § 1441(a), contending they did not waive their venue arguments by removing this case to federal court. True. But waiver is not at issue here. Rather,

---

[3] RSI and Wingenroth cite to *Superior Precast, Inc. v. Safeco Ins. Co. of Am.*, 71 F. Supp. 2d 438, (E.D. Pa. 1999). The court in that case relied on 28 U.S.C. § 1391 to determine whether venue was proper in a removed action. *Id*. at 443–44. But that court did not cite to *Polizzi,* 345 U.S. at 665, where the United States Supreme Court determined that § 1391 has no application in a case removed from state court. Thus, the court disagrees with *Superior Precast*. *See Heft*, 355 F. Supp. 2d at 771 n.27 (disagreeing with *Superior Precast*).

as set forth above, § 1441(a), instead of § 1391, is the applicable venue provision, and under that provision, venue is proper in the Middle District of Pennsylvania. Thus, in this context waiver "is a misnomer." *Heft*, 355 F. Supp. 2d at 772. "Once a defendant files a notice of removal, the propriety of venue is determined by reference to § 1441(a)." *Id.* "Other provisions, including state statutes, are not 'waived' by the defendant's action but are simply no longer applicable to the question of proper venue." *Id.* (footnote omitted). Thus, RSI and Wingenroth's non-waiver argument is without merit.

RSI and Wingenroth also note that CTW alleges in the amended complaint that venue is proper under 28 U.S.C. § 1391(b)(2) and (b)(3). Although that is true, *see doc. 23* ¶ 18 (citing 28 U.S.C. § 1391(b)(2), (3)), as set forth above, it is the moving party's burden to establish that venue is improper. Moreover, in its brief in opposition, CTW correctly asserts that § 1441(a) is the proper venue provision in an action removed from state court.[4]

In sum, venue is proper in this district under 28 U.S.C. § 1441(a). Thus, we will deny RSI and Wingenroth's Fed. R. Civ. P. 12(b)(3) motion challenging venue

---

[4] Although CTW properly points to 28 U.S.C. § 1441(a) as the proper venue provision in a removed action, some of its contentions in connection with its later argument regarding whether transfer is appropriate under 28 U.S.C. § 1404 seem to suggest that venue is proper in the Middle District under 28 U.S.C. § 1391. As set forth above, § 1391 is not the applicable provision for determining whether venue is proper in the Middle District.

in this district, and we will deny their request to transfer venue under 28 U.S.C.

§ 1406.

## IV. 28 U.S.C. § 1404.

RSI and Wingenroth also contend that the court should transfer venue to the

Western District of Pennsylvania pursuant to 28 U.S.C. § 1404(a).  That section

provides:  "For the convenience of parties and witnesses, in the interest of justice, a

district court may transfer any civil action to any other district or division where it

might have been brought or to any district or division to which all parties have

consented." 28 U.S.C. §1404(a).  "In a case that has been removed from state

court, a district court may transfer venue pursuant to § 1404(a)." *Gold Line,* 2022

WL 16554992, at *15

"Section 1404(a) provides for the transfer of a case where both the original

and the requested venue are proper." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873,

878 (3d Cir. 1995).  Thus, when deciding a motion under §1404(a), the first

question is whether the proposed, alternative forum is a proper venue, i.e., whether

the action might have been brought there. *Davis ex rel. Donohue v. Martin*, No.

1:15-CV-0508, 2015 WL 3697505, at *3 (M.D. Pa. June 12, 2015) ("The threshold

issue is whether the action could have been brought in the proposed, alternative

forum.").  If the proposed alternative forum is a proper venue, then we turn to

14

whether venue should be transferred there under § 1404(a).  In making that

determination, the court weighs "a variety of public and private interests[.]"

*Etheridge v. World Mktg. of Am., Inc.*, No. 1:20-CV-00272, 2021 WL 1564336, at

*2 (M.D. Pa. Apr. 21, 2021).  "Factors the court must consider include the three

enumerated under the statute—convenience of the parties, convenience of the

witnesses, and the interests of justice—along with all other relevant private and

public factors, including the plaintiff's choice of forum and the local interest in

deciding local controversies close to home." *In re McGraw-Hill Glob. Educ.*

*Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018).  "Courts consider these factors to

determine, on balance, whether the litigation would 'more conveniently proceed

and the interests of justice be better served by transfer to a different forum.'" *Id*.

(quoting *Jumara*, 55 F.3d at 879 (quoting 15 Charles A. Wright, Arthur R. Miller

& Edward H. Cooper, *Federal Practice and Procedure*, § 3847 (2d ed. 1986)).

    The relevant factors include: (1) the "plaintiff's forum preference as

manifested in the original choice"; (2) "the defendant's preference"; (3) "whether

the claim arose elsewhere"; (4) "the convenience of the parties as indicated by their

relative physical and financial condition"; (5) "the convenience of the witnesses—

but only to the extent that the witnesses may actually be unavailable for trial in one

of the fora"; (6) "the location of books and records (similarly limited to the extent

that the files could not be produced in the alternative forum"; (7) "the

enforceability of the judgment"; (8) "practical considerations that could make the trial easy, expeditious, and inexpensive"; (9) "the relative administrative difficulty in the two fora resulting from court congestion"; (10) "the local interest in deciding local controversies at home"; (11) "the public policies of the fora"; and (12) "the familiarity of the trial judge with the applicable state law in diversity cases." *Jumara*, 55 F.3d at 879-80 (internal citations omitted).

"The court maintains the ultimate discretion in determining which factors are germane to the instant action and the weight given to each factor." *Mummert v. United States*, No. 1:18-CV-00856-SHR, 2019 WL 144925, at *2 (M.D. Pa. Jan. 9, 2019). "Although the district court is given the ultimate discretion in transferring venue, the exercise of this discretion should not be liberal." *Etheridge,* 2021 WL 1564336, at *1. "'[U]nless the balance of convenience of the parties is *strongly* in favor of defendant, the plaintiff's choice of forum should prevail.'" *Id.* at 2 (italics in original) (quoting *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)). "The § 1404(a) movant bears the burden of persuasion." *In re McGraw-Hill Global Educ. Holdings, LLC*, 909 F.3d 48, 57 (3d Cir. 2018).

Here, a section of CTW's brief in opposition is labelled "The Western District Lacks Venue Over CTW's Claims." *Doc. 28* at 13 (all caps removed). But CTW does not actually set forth an argument for why venue is not proper in the Western District. *See id*. at 13–19. Rather, in this section, CTW presents a

16

mishmash of arguments regarding why venue is proper in the Middle District as well as arguing that the defendants provide no justification to disturb CTW's choice of venue. *Id*. And at one point, CTW asserts that assuming arguendo that venue is proper in both the Middle District and the Western District, the applicable factors regarding whether to transfer do not warrant transfer to the Western District. *Id*. at 14. We too will assume for the sake of argument that venue is proper in the Western District. Thus, we turn to whether RSI and Wingenroth have shown that based on the relevant factors, the case should be transferred to the Western District.

In their brief in support, RSI and Wingenroth mention some of the factors used to determine whether to transfer a case under § 1404(a). *See doc. 27* at 18. But they make only a cursory argument as to why the case should be transferred:

> The Western District is the most just and convenient forum to adjudicate this matter. While the Plaintiff is based in Virginia and the Defendants are based in Florida, PIT, the Contract's owner, is based in the Western District and the Project contemplated by the Contract's bid package is located in the Western District. *See* Amended Complaint, ¶ 8 & Exhibit 1. Moreover, every in-person meeting between the parties occurred in the Western District. *See* Amended Complaint, Exhibit 4; **Exhibit A**, ¶ 17. The case's significant events and prominent players are substantially more connected to the Western District than to the Middle District. Transfer to the Western District would therefore promote an "easy, expeditious, [and] inexpensive" trial and promote the interest that a dispute centered on an entity and project located in Western Pennsylvania be decided in the Western District. *See Jumara*, 55 F.3d at 879.

17

Accordingly, even if this Court considers the Middle District to be a proper venue, it should nonetheless transfer the action to the Western District under 28 U.S.C. § 1404.

*Id*. at 18–19.

In its brief in opposition, CTW points out that RSI and Wingenroth have not addressed the applicable private and public factors. *See doc. 28* at 14 n.10, 19.  In their reply brief, RSI and Wingenroth do address the private and public factors; they even include charts outlining the factors. *See doc. 29* at 11-16.  But a reply brief is intended to "reply to matters argued in a brief in opposition" to a motion. M.D. Pa. L.R. 7.7.  A party opposing a motion, "typically does not have the opportunity to respond" to an argument raised in a reply brief. *Sloan v. Murray*, No. 3:CV-11-0994, 2017 WL 3495190, at *5 n.4 (M.D. Pa. Aug. 10, 2017).  Thus, "[a] reply brief is not the appropriate forum in which to raise new issues and the court need not address issues raised for the first time therein." *Bell v. Lackawanna Cty.*, 892 F. Supp. 2d 647, 688 n.41 (M.D. Pa. 2012).  RSI and Wingenroth's arguments in their reply brief regarding the private and public factors comes too late, and we conclude that RSI and Wingenroth have not met their burden of showing that litigating in this court would be inconvenient or that transferring the

18

case to the Western District of Pennsylvania would be in the interest of justice.[5]

Thus, we will deny their motion to transfer venue under 28 U.S.C. § 1404(a).

## V.  Fed. R. Civ. P. 12(b)(6).

RSI and Wingenroth also move to dismiss the amended complaint under

Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be

---

[5] Although we will not generally consider the arguments in RSI and Wingenroth's reply brief because they are untimely, we briefly address what appears to be their strongest argument for why the case should be transferred.  One of the relevant factors to consider under § 1404 (a) is "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora[.]" *Jumara*, 55 F.3d at 879.  RSI and Wingenroth assert in their reply brief, that PIT "personnel would be crucial witnesses in this matter," and they suggest that because Butler, Pennsylvania is more than 200 miles from the federal courthouse in Harrisburg, Pennsylvania, those witnesses may not be within this court's subpoena power. *Doc. 29* at 15.  But "this factor is only given weight when there is some reason to believe that a witness actually will refuse to testify absent a subpoena." *Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 732 (D. Del. 2012).  "'It is the defendant's burden to show both the unavailability of a particular witness and that witness' importance to the defendant's case[.]" *Id*. (quoting *Tessera, Inc. v. Sony Elecs. Inc.*, No. CIV. 10-838 RMB KW, 2012 WL 1107706, at *6 (D. Del. Mar. 30, 2012)).  And a defendant does not meet that burden by merely stating that there may be witnesses that are beyond the court's subpoena power. *Id*.; *see also Etheridge*, 2021 WL 1564336, at *6 ("World Marketing does not satisfy its burden merely by stating that there are numerous individuals residing in Mississippi who have been identified as having discoverable information and who may become trial witnesses, and if so, may be unwilling to travel to Pennsylvania.").  Here, RSI and Wingenroth have not specifically identified the PIT witnesses at issue or shown that there is a reason to think that they in fact would be unwilling to testify without a subpoena.

granted.  For the reasons set forth below, we will deny the motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

### A.  Pleading and Fed. R. Civ. P. 12(b)(6) Standards.

In accordance with Fed. R. Civ. P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  When reviewing a motion to dismiss under Rule 12(b)(6), "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).  In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769–70 (M.D. Pa. 2012).  "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  The statement required by Rule 8(a)(2) must give the defendant fair notice of the nature of the plaintiff's

20

claim and of the grounds upon which the claim rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  Detailed factual allegations are not required, but more is required than "labels," "conclusions," or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  "A complaint has to 'show' such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court "'must accept all facts alleged in the complaint as true and construe the complaint in the light most favorable to the nonmoving party.'" *Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 437 (3d Cir. 2018) (quoting *Flora v. Cty. of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015)).  But a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).  A court also need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere

speculation.  In practice, consideration of the legal sufficiency of a complaint

entails a three-step analysis:

> First, the court must "tak[e] note of the elements a
> plaintiff must plead to state a claim."  Second, the court should
> identify allegations that, "because they are no more than
> conclusions, are not entitled to the assumption of truth."
> Finally, "where there are well-pleaded factual allegations, a
> court should assume their veracity and then determine whether
> they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010) (footnote and

citations omitted) (quoting *Iqbal,* 556 U.S. at 675, 679).


### B.  Discussion.

RSI and Wingenroth assert that for each of its claims, CTW must prove that

their alleged conduct is causally connection to the actual damages alleged.  They

contend, however, that CTW's allegations do not plausibly allege such a causal

connection.  This is so, they argue, because PIT had the exclusive authority to

select or reject bids; RSI and Wingenroth were acting on behalf of PIT; and

Wingenroth's emails to Hammert were communicating a decision that PIT had

already made to reject CTW's bid.  They proclaim that the grant agreement

between PIT and PennDOT is a "red herring" because regardless of that

agreement, PIT alone had the authority to select or reject bidders, and PIT decided

to reject CTW's bid.

We reject RSI and Wingenroth's arguments in this regard.  Those arguments are not based on construing the allegations in the amended complaint in the light most favorable to CTW.  Even though PIT may have had the ultimate authority to accept or reject a bid, based on the facts alleged in the amended complaint, if PIT wanted to get the grant money from PennDOT, it needed PennDOT's approval to accept or reject a bid.  And CTW alleges that Wingenroth's communications with Hammert were taken to obtain that approval.  CTW further alleges that it was involved in other project with RSI and Wingenroth, and that their relationship was contentious.  RSI and Wingenroth also allegedly failed to conduct an investigation before setting forth erroneous negative information about CTW.  And as to each count, CTW alleges that the acts of RSI and Wingenroth "were the direct and proximate cause of CTW's Bid being rejected and CTW not being awarded the contract for the Project." *Doc. 23* ¶ 112 (negligence); ¶ 127 (defamation); ¶ 143 (false light); ¶ 158 (commercial disparagement); ¶ 176 (tortious interference).  Accepting the factual allegations in the amended complaint as true and construing those allegations in the light most favorable to CTW, as we must when deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), we conclude that CTW has sufficiently alleged a causal connection between RSI and Wingenroth's conduct and its damages.  According, we will deny the motion to dismiss for failure to state a claim upon which relief can be granted.

## VI.  Conclusion.

For the foregoing reasons, we will deny RSI and Wingenroth's motion to transfer venue and/or to dismiss for failure to state a claim upon which relief can be granted.  An appropriate order follows.

<u>**S/Susan E. Schwab**</u>
Susan E. Schwab
United States Magistrate Judge